UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

CHRISTOPHER LEGG, an individual, on
behalf of himself and all others similarly situated,

    Plaintiff,

v.                              **COMPLAINT - CLASS ACTION**

AMERICAN EAGLE OUTFITTERS, INC.,
a Delaware Corporation,

    Defendant.
_____/

**CLASS ACTION COMPLAINT FOR STATUTORY DAMAGES AND INJUNCTIVE RELIEF UNDER 47 U.S.C. § 227 *et seq.*, THE TELEPHONE CONSUMER PROTECTION ACT**
**JURY DEMAND**

1.    The Pew Research Center has reported 69% percent of cellular users who use text messaging receive unwanted text message spam with 25% percent of them on a weekly basis.[1] Plaintiff is one such person who regularly receives text message spam. After several requests to stop texting to no avail, Plaintiff has decided to bring the instant class action complaint alleging violations of 47 U.S.C § 227, *et seq.*, the Telephone Consumer Protection Act ("TCPA"). Simply put, Plaintiff has filed the instant lawsuit in an effort to put an end to this form of text

---

[1] Source: http://pewinternet.org/Reports/2012/Mobile-phone-problems/Main-findings.aspx (last visited on May 3, 2014).

message spam and protect his fundamental right to privacy as well as the rights of the putative class members.

2. In brief, Defendant has sent out thousands of unlawful text messages in violation of the TCPA. By effectuating these unauthorized text message calls (also known as "SMS Messages"), Defendant has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies mobile spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such spam and such messages diminish cellular battery life, waste data storage capacity, and are an intrusion upon seclusion.

3. In order to redress these injuries, Plaintiff, on behalf of himself and the proposed classes of similarly situated individuals described below, brings this suit under the TCPA, which specifically prohibits unsolicited voice and text calls to cell phones. Defendant has sent unwanted text messages in a manner which violates the right of privacy of the putative class members. Defendant continued to send these unwanted text messages even after Plaintiff and other putative class members requested that the offending texts stop. On behalf of the class, Plaintiff seeks an injunction requiring Defendant to cease all unlawful text messages and an award of statutory damages to the class members, together with costs and reasonable attorney's fees. All allegations contained herein are based upon

information and belief of Plaintiff or the investigative efforts of the undersigned counsel.

## JURISDICTION AND VENUE

4.	This Court has jurisdiction over this class action lawsuit under 28 U.S.C. § 1331 and 47 U.S.C. § 227.  Venue in this District is proper because Plaintiff resides here and Defendant regularly sends text messages to individuals residing within this District.

## INTERESTED PARTIES

5.	Plaintiff, CHRISTOPHER LEGG (hereinafter, "Plaintiff" or "Mr. Legg"), is a natural person, and citizen of the State of Florida, residing in Broward County, Florida.

6.	Defendant, AMERICAN EAGLE OUTFITTERS, INC. (hereinafter, "AEO" or "Defendant"), is a Delaware Corporation, headquartered in Pittsburgh, Pennsylvania, and an international clothing retailer with more than 1,000 retail stores, the vast majority of which are located in the United States.  Defendant has made extensive use of mobile marketing, including the use of mass text messaging, and in 2009 was awarded second place as mobile retailer of the year by Mobile Commerce Daily.[2]

---

[2]	http://www.mobilecommercedaily.com/american-eagle-outfitters-takes-second-place-2009-mobile-retailer-of-the-year (last visited on December 25, 2013).

## **A BRIEF OVERVIEW OF TEXT MESSAGING**

7. In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

8. One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120 - 500 characters.

9. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

10. The open rate for SMS messages exceeds 99% percent, and 90% percent of those messages are read within three minutes.[3] Conversely, the open rate for email in the retail industry is 31% percent.[4]

11. Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam, can actually cost their recipients money, because cell

---

[3] Source: http://www.tatango.com/blog/sms-open-rates-exceed-99/ (last visited Dec. 25, 2013).

[4] Source: http://mailchimp.com/resources/research/email-marketing-benchmarks/ (last visited Dec. 25, 2013).

phone users must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

12. Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six digit extensions, that can be used to address SMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services as television program voting or more benevolent uses, such as making charitable donations.

13. A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

14. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

15. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute. *See FCC Declaratory Ruling*, 23 FCC Rcd at 565 (¶10).

16. Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).

17. The FCC specifically ruled that a consumer's prior express consent to receive future text messages may be revoked and texts sent after revocation violate the TCPA. *In re SoundBite Communications, Inc.*, --- FCC Rcd. ----, No. 02-278, 2012 WL 5986338 (Nov. 29, 2012).

18. Even before the FCC Order that consent to receive a text message could be revoked, the Mobile Marketing Association declared in October 2012 in its *U.S. Consumer Best Practices for Messaging* that "[a] subscriber must be able to stop participating and receiving messages from any program by sending STOP to the short code used for that program…" and "… if the subscriber sent STOP or STOP ALL to the short code, they are opted out of all programs they were enrolled in on that short code."

## FACTUAL ALLEGATIONS SPECIFIC TO MR. LEGG

19.     Defendant operated via its mobile marketer EBAY, INC.[5] (hereinafter, "EBAY") and promoted a text alert service that utilizes the short code 32453. On a telephone keypad, 32453 is the alphanumeric equivalent of the word "EAGLE." *See* **Exhibit A** attached hereto.

20.     Defendant sent Plaintiff text multiple messages offering him discounts if he shopped at AEO online.

21.     On or about November 22, 2013, Plaintiff replied to a text message from Defendant by texting the word "Stop" in order to cease receiving future text messages from Defendant.

22.     On or about November 22, 2013, Defendant sent Plaintiff a response text message confirming that it received Plaintiff's stop instruction, and stated in (digital) writing that Plaintiff would not receive any more text messages from Defendant.[6]

23.     Despite confirming Plaintiff's stop request and stating that Plaintiff would not receive any further text messages, Defendant caused additional

---

[5] eBay, Inc. is a Delaware Corporation, headquartered in San Jose, California, and a multinational electronic commerce corporation that, among other things, operates ebay enterprise™, a subdivision of EBAY, which previously operated under the name M3 Mobile, Inc. until it was eventually acquired by Defendant EBAY in June 2011. EBAY, via ebay enterprise™, operates the short code 32453 on behalf of AEO and, upon information and belief, AEO provides the content of the text to be sent via EBAY's telephony system.

[6] Plaintiff does not allege that the confirmatory opt-out text message was in any way unlawful – only the subsequent text messages sent by Defendant thereafter.

7

promotional text messages to be sent to Plaintiff on November 28, 2013 and November 29, 2013.

24. On or about November 30, 2013, Plaintiff again replied with an instruction to stop sending him texts, and again received a text message back stating that he would no longer receive text messages from Defendant.

25. On or about December 1, 2013, Plaintiff again replied with instructions to stop sending him texts.

26. Despite again confirming Plaintiff's stop request and stating that Plaintiff would not receive any more text messages from Defendant, Defendant caused additional promotional text messages to be sent to Plaintiff on December 2, 2013.

27. On or about December 2, 2013, Plaintiff again replied with the instruction "Stop" in order to cease the deluge of text messages.

28. Despite more than four "Stop" requests, Defendant caused Plaintiff to be sent an additional promotional text message on December 3, 2013.

29. There have been many similar complaints regarding Defendant's text message alert service over the past several years. *See* **Exhibit B** attached hereto. In sum, Defendant's text message alert service is defective as it does not permit subscribers to opt-out.

30. Given Defendant's extensive use of mobile marketing and long malfunctioning text message alert service, there are likely thousands of putative class members as further described herein. Moreover, taking into consideration Defendant's national presence, there is no practical way to send the above-described text message alerts without using an automatic telephone dialing system.

31. Based upon an industry average opt-out rate of 3.7% percent,[7] a class of more than forty people would exist assuming at least 1,082 people had previously subscribed to the Defendant's text message alert service over the last four years. *See generally, Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553-57 (11th Cir. 1986) (noting that more than 40 generally suffices and holding that 240 certainly did).

32. Upon information and belief, all members of the putative class received messages that were sent *en masse* using an automatic telephone dialing system, also known as an "auto-dialer"; the device Defendant used to send the aforesaid text messages had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers or would otherwise qualify as a "predictive dialer."

## CLASS ACTION ALLEGATIONS

---

[7] Source: http://www.tatango.com/blog/average-opt-out-rate-for-retail-sms-marketing-campaigns/ (last visited Dec. 27, 2013).

9

33. This action is also brought on behalf of two classes. Class 1 consists of:

> All persons in the United States who unsubscribed to receive text messages from Defendant AEO and were subsequently sent text message advertisements from Defendant AEO (or any party on behalf of Defendant AEO) to their cellular telephone wherein said text messages were sent using an automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator during the four year period prior to the filing of the complaint in this action through the date of certification.

34. Class 2 consists of:

> All persons in the United States who, via text message, unsubscribed to receive text messages from Defendant AEO and were subsequently sent more than one text message advertisement within a 12-month period from Defendant AEO (or any party on behalf of Defendant AEO) to their cellular telephone during the four year period prior to the filing of the complaint in this action through the date of certification.

35. Excluded from the Classes are Defendant, its legal representatives, assigns, and successors, and any entity in which the Defendant has a controlling interest. Also excluded from the Classes is the Judge to whom this case is assigned, the Judge's immediate family, and Plaintiff's counsel and their employees. Plaintiff reserves the right to amend the above-stated class definitions based upon facts learned in discovery.

36. Plaintiff alleges on information and belief based upon the Defendant's use of mass text messages that each Class is so numerous that joinder of all

members of the class is impractical. There are more than forty-one (41) individuals in each Class as previously defined herein.

37. There are questions of law or fact common to the Classes, which common issues predominate over any issues involving only individual class members. Factual and/or legal issues common to each class member include:

    a. Whether Defendant's conduct is governed by the TCPA?

    b. Whether the text message advertisements sent by Defendant after Plaintiff unsubscribed violated the TCPA?

    c. Are the class members entitled to treble damages based upon the willfulness of Defendant's conduct?

    d. Whether Defendant should be enjoined from engaging in such conduct in the future?

38. Plaintiff's claim is typical of those of the members of each Class. Within each Class, all claims are based on the same facts and legal theories.

39. Plaintiff will fairly and adequately protect the interests of each Class. He has retained counsel experienced in handling actions involving unlawful practices under the TCPA and class actions. Neither Plaintiff nor his counsel has any interest that might cause them not to vigorously pursue this action.

40. Certification of each Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

      (1)    The questions of law or fact common to the members of each Class predominate over any questions affecting individual members.

      (2)    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

41.    Certification of each Class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that Defendant has acted on grounds generally applicable to each Class thereby making appropriate relief with respect to each Class as a whole.

42.    Mr. Legg requests that each Class be certified as a hybrid class under Rule 23(b)(3) for monetary damages, and pursuant to Rule 23(b)(2) for injunctive relief.

**COUNT I**
**NEGLIGENT VIOLATIONS OF §227(b) OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**
**ON BEHALF OF CLASS 1**

43.    Plaintiff incorporates Paragraphs 1 through 42.

44.    Defendant sent unwanted text messages to Plaintiff and the members of Class 1 using an automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator.

45. The excessive calls (*i.e.* text messages sent post-revocation) were made without the prior express consent of the parties.

46. The aforesaid calls violate the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of Class 1, and against Defendant AEO for:

 (a) An order certifying this case to proceed as a class action;

 (b) Statutory damages of $500 dollars per call for negligent violations of the TCPA;

 (c) An injunction requiring Defendant to cease all communications in violation of the TCPA;

 (d) Reasonable attorney's fees and costs; and

 (e) Such further relief as this Court may deem appropriate.

### COUNT II
### WILLFUL VIOLATIONS OF §227(b) OF THE TELEPHONE CONSUMER PROTECTION ACT ON BEHALF OF CLASS 1

47. Plaintiff incorporates Paragraphs 1 through 42.

48. Defendant sent unwanted text messages to Plaintiff and the members of Class 1 using an automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator.

49. The excessive calls (*i.e.* text messages sent post-revocation) were made without the prior express consent of the parties.

50. The aforesaid calls violate the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of Class 1, and against Defendant AEO for:

(a) An order certifying this case to proceed as a class action;

(b) Statutory damages of up to $1,500 dollars per call for each willful violation of the TCPA;

(c) An injunction requiring Defendant to cease all communications in violation of the TCPA;

(d) Reasonable attorney's fees and costs; and

(e) Such further relief as this Court may deem appropriate.

## COUNT III
## NEGLIGENT VIOLATIONS OF §227(c) OF THE TELEPHONE CONSUMER PROTECTION ACT ON BEHALF OF CLASS 2

51. Plaintiff incorporates Paragraphs 1 through 42.

52. Defendant sent more than one text message advertisement to Plaintiff and each member of Class 2 within a 12-month period after being told to stop.

53. The aforesaid calls violate the TCPA, 47 U.S.C. § 227(c).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of Class 2, and against Defendant AEO for:

(a) An order certifying this case to proceed as a class action

(b) Statutory damages of up to $500 dollars per call for negligent violations of the TCPA;

(c) An injunction requiring Defendant to cease all communications in violation of the TCPA;

(d) Reasonable attorney's fees and costs; and

(e) Such further relief as this Court may deem appropriate.

<h3 style="text-align:center"><u>COUNT IV</u><br/><u>WILLFUL VIOLATIONS OF §227(c) OF THE</u><br/><u>TELEPHONE CONSUMER PROTECTION ACT</u><br/><u>ON BEHALF OF CLASS 2</u></h3>

54. Plaintiff incorporates Paragraphs 1 through 42.

55. Defendant sent more than one text message advertisement to Plaintiff and each member of Class 2 within a 12-month period after being told to stop.

56. The aforesaid calls violate the TCPA, 47 U.S.C. § 227(c).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Class 2, and against Defendant AEO for:

(a) An order certifying this case to proceed as a class action

(b) Statutory damages of up to $1,500 dollars per call for each willful violation of the TCPA;

(c) An injunction requiring Defendant to cease all communications in violation of the TCPA;

  (d) Reasonable attorney's fees and costs; and

  (e) Such further relief as this Court may deem appropriate.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated May 3, 2014.

        Respectfully submitted,

        By:/s/ *Scott D. Owens*
        Scott D. Owens, Esq.
        *Attorney for Plaintiff and the putative Class*
        Florida Bar No. 0597651

        SCOTT D. OWENS, P.A.
        664 E. Hallandale Beach Blvd.
        Hallandale Beach, Florida 33009
        Telephone: 954-589-0588
        Facsimile: 954-337-0666
        scott@scottdowens.com