**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 0:14-cv-60158-RNS**

CHRISTOPHER LEGG, an individual, on
behalf of himself and all others similarly situated,

      Plaintiff,

v.

AMERICAN EAGLE OUTFITTERS, INC.,
a Delaware Corporation,

      Defendant.

_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

      Plaintiff, CHRISTOPHER LEGG, hereby submits this Memorandum of Law in Support of Plaintiff's Motion for Class Certification. For the reasons stated herein, Plaintiff respectfully requests that this Court enter an Order certifying this case as a class action, with the ruling on this matter to be stayed until the completion of discovery.

**ARGUMENT**

**I.    INTRODUCTION**

      This is a textbook case for class certification. Defendant, AMERICAN EAGLE OUTFITTERS, INC., unlawfully sent text messages through the use of an automatic telephone dialing system to thousands of consumers' cellular telephones without their prior express consent. Through that conduct, Defendant not only harassed each member of the putative class, but repeatedly violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), thereby entitling those consumers to statutory damages and injunctive relief.

Plaintiff is one such consumer. He received numerous unwanted text message advertisements on his cellular telephone from Defendant or parties authorized by Defendant, even though Plaintiff repeatedly asked Defendant to stop sending him text messages, and even though Defendant acknowledged receipt of Plaintiff's request. In response to Defendant's unlawful conduct, and in an effort to ensure that Defendant does not continue this conduct in the future, Plaintiff brought this putative class action. Plaintiff seeks an order from the Court certifying two proposed classes of individuals to whom Defendant sent similar unauthorized text messages.

As discussed below, both of the proposed classes meet each of the requisites for class certification under Fed. R. Civ. P. 23 and therefore, the instant motion should be granted in its entirety.

## II.     FACTUAL BACKGROUND

### A.     Facts Applicable to All Putative Class Members

In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120 - 500 characters.

An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

The open rate for SMS messages exceeds 99% percent, and 90% percent of those messages are read within three minutes.[1] Conversely, the open rate for email in the retail industry is 31% percent.[2]

Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam, can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003). Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).

Here, each putative class member received unwanted text messages on his or her cellular telephone from Defendant during the four years period prior to the filing of this action. Moreover, each putative class member continued receiving these unwanted text messages after "unsubscribing" to receive the messages, *e.g.*, after asking Defendant to stop sending them. The

---

[1]  Source: http://www.tatango.com/blog/sms-open-rates-exceed-99/ (last visited Dec. 25, 2013).

[2]  Source:  http://mailchimp.com/resources/research/email-marketing-benchmarks/  (last  visited Dec. 25, 2013).

FCC determined that a consumer's prior express consent to receive future text messages may be revoked, and that texts sent after such revocation generally violate the TCPA. *See In re SoundBite Communications, Inc.*, 27 FCC Rcd. 15391 at ¶11, 2012 FCC LEXIS 4874 at **20 (Nov. 29, 2012).

### B.   Facts Applicable to Plaintiff Legg.

On or about November 22, 2013, Plaintiff replied to a text message from Defendant with the instruction to stop sending him texts. On or about November 22, 2013, Defendant sent Plaintiff a response text message confirming that it received Plaintiff's stop instruction, and further stating that Plaintiff would not receive any more text messages from Defendant.[3]

Despite confirming Plaintiff's stop request and stating that Plaintiff would not receive any further text messages, Defendant caused additional promotional text messages to be sent to Plaintiff on November 28, 2013 and November 29, 2013. On or about November 30, 2013 and December 1, 2013, Plaintiff again replied with the instruction to stop sending him texts, and received a text message back stating that he would no longer receive text messages from Defendant.

Despite again confirming Plaintiff's stop request, Defendant caused additional promotional text messages to be sent to Plaintiff on December 2, 2013. On or about December 2, 2013, Plaintiff again replied with the instruction to stop sending him texts.

Despite more than four stop requests, Defendant caused Plaintiff to be sent an additional promotional text message on December 3, 2013.

---

[3] Plaintiff does not allege that the confirmatory opt-out text message was in any way unlawful – only the subsequent text messages sent by Defendant thereafter.

There have been many similar complaints regarding Defendant's text message service over the past several years. *See* **Exhibit B** to the Complaint. In sum, Defendant's text message alert service is defective as it does not permit subscribers to opt-out.

**C.     The Proposed Classes.**

As a result of Defendant's conduct described above, Plaintiff brought the instant lawsuit and now seeks certification of two classes, defined as follows:

> Class 1
> All persons in the United States who unsubscribed to receive text messages from Defendant AEO and were subsequently sent text message advertisements from Defendant AEO (or any party on behalf of Defendant AEO) to their cellular telephone wherein said text messages were sent using an automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator during the four year period prior to the filing of the complaint in this action through the date of certification.

> Class 2
> All persons in the United States who, via text message, unsubscribed to receive text messages from Defendant AEO and were subsequently sent more than one text message advertisement within a 12-month period from Defendant AEO (or any party on behalf of Defendant AEO) to their cellular telephone during the four year period prior to the filing of the complaint in this action through the date of certification.

As demonstrated below, both classes meets each of Rule 23's requisites to certification and therefore, the instant motion should be granted in its entirety.

**III.     THE PROPOSED CLASSES MEET EACH OF THE REQUIREMENTS FOR CLASS CERTIFICATION.**

Class certification is appropriate under Rule 23 when the proponent of certification demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) have been satisfied. Fed. R. Civ. P. 23; *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004), *abrogated on other grounds* by *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008). Rule 23(a) requires (i) the proposed class to be so numerous that joinder of

all individual class members is impracticable (numerosity); (ii) that there are common questions of law and fact among the class members (commonality); (iii) that the named representative's claims are typical of those of the class (typicality); and, (iv) that both the named representative and her counsel possess the ability to adequately represent the interests of the class (adequacy). Fed. R. Civ. P. 23(a); *see Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1189-90 (11th Cir. 2009).

Here, Plaintiff seeks certification of the proposed classes under both Rule 23(b)(2) and 23(b)(3). In order to certify a class under Rule 23(b)(2), a plaintiff must show that the party opposing certification has acted or failed to act on grounds generally applicable to the class as a whole, "so that final injunctive relief or corresponding declaratory relief is appropriate...." Fed. R. Civ. P. 23(b)(2); *see also Heffner v. Blue Cross & Blue Shield of Alabama, Inc.*, 443 F.3d 1330, 1344 (11th Cir. 2006). Similarly, in order to certify a class under Rule 23(b)(3), a plaintiff must show (i) that questions of law or fact common to the proposed class members predominate over questions affecting only individual members, and (ii) that the class mechanism is a superior method for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3); *Klay*, 382 F.3d at 1251.

In determining whether to certify a proposed class, a court does not inquire into the merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). A court should only consider "the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Babineau*, 576 F.3d at 1190. Indeed, courts are required to analyze the allegations of the complaint and any evidence submitted by the parties, with a presumption in favor of certification. *Id*.

### A.     The Classes Meet the Numerosity Requirement.

The first requirement of Rule 23(a) is met when "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1); *see also, Fabricant v. Sears Roebuck, et al.*, 202 F.R.D. 310, 313 (S.D. Fla. 2010) (finding that Rule 23(a) requires that joinder be impracticable, not impossible). To satisfy this requirement, there is no "definite standard as to the size of a given class, and plaintiff's estimate need only be reasonable." *Id.* (citing *Kilgo v. Bowman Transp. Inc.*, 789 F.2d 711, 718 (11th Cir. 1984)). Courts are permitted to "accept common sense assumptions" about the numerosity requirement. *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 205 (E.D. Pa. 2001), *aff'd* 305 F.3d 145 (3rd Cir. 2002). Generally, the numerosity requirement is met if the class has 40 or more members. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Based upon an industry average opt-out rate of 3.7% percent,[4] common sense dictates that a class of more than forty people would exist here if only 1,082 people had previously subscribed to the Defendant's text message alert service over the last four years.

However, Plaintiff estimates that here the proposed classes have thousands of members. By design, mass text messaging relies upon large databases of consumer telephone numbers. Moreover, in its most-recent 10K, AEO boasts that it is a "leading global specialty retailer," that it operates more than a thousand stores, and that it ships to more than eighty countries.[5] Also, there have been many complaints similar to Plaintiff's regarding Defendant's text message alert service over the past several years. *See* **Exhibit B** to the Complaint. Therefore, given

---

[4] Source:http://www.tatango.com/blog/average-opt-out-rate-for-retail-sms-marketing-campaigns/ (last visited Dec. 27, 2013).

[5] Source:http://investors.ae.com/files/doc_financials/2013/AmericanEagleOutfittersInc_10-K_20140313.pdf (last visited April 25, 2014) at p. 3.

Defendant's large size and use of mobile marketing, its malfunctioning text message service, and applying "common sense assumptions," it is manifestly reasonable to estimate that the classes contain thousands of consumers, if not more. Accordingly, the proposed Classes meet the numerosity requirement.

### B.      The Classes Meets the Commonality Requirement.

Next, Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet the commonality requirement, the representative plaintiff is required to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (*quoting Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In other words, commonality requires that the claims of the class members "depend upon a common contention…of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

"The threshold for commonality is not high." *In re Recoton Corp*, 248 F.R.D. 606, 618 (M.D. Fla. 2006) (*quoting Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003)). Rather, the requirement is met where there is "at least one issue affecting all or a significant number of proposed class members." *Fabricant,* 202 F.R.D. at 313; *see also Agan v. Kathzamn & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004) (finding that the commonality requirement is "generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members"). In fact, "[t]he requirement is met if the questions linking the class members are substantially related to the resolution of the litigation even though the individuals are not identically situated." *Collins v. Int'l Dairy Queen, Inc.,* 168

F.R.D. 668, 673-74 (M.D. Ga. 1996) (*quoting Coleman v. Cannon Oil Co.,* 141 F.R.D. 516, 521 (M.D. Ala. 1992)).

The claims of Plaintiff and the putative class members are based on the common contention that Defendant continued to send automated text messages to thousands of cellular telephone numbers using the same technology, despite receiving text message requests from recipients to stop. Moreover, that common contention will be proved through the use of common and generalized evidence applicable to the classes as a whole. Defendant's conduct gives rise to several factual questions common to all class members, including: (i) the capabilities of the technology Defendant used to send the text messages at issue; (ii) how many text messages it sent each putative class member; and (iii) whether Defendant willfully engaged in the above-described conduct. Those common factual questions lead to several legal questions common to all class members, including: (i) whether Defendant's conduct violated the TCPA, (ii) whether class members are entitled to treble damages based on the willfulness of Defendant's conduct; and (iii) whether Defendant should be enjoined from engaging in such conduct in the future. In addition, Defendant's practice of placing automated telephone solicitation calls is "a standardized course of conduct that affects all class members." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 685 (S.D. Fla. 2004). Therefore, Plaintiff and the proposed class easily meet the low-threshold requirements of commonality.

### C.     Plaintiff's Claims Are Typical of the Class Members' Claims.

The typicality element of Rule 23 simply requires that Plaintiff's claims be typical of those of the other class members. Fed. R. Civ. P. 23(a)(3). "[T]ypicality measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall,* 334 F.3d 1253, 1256 (11th Cir. 2003) (internal quotation omitted). The

purpose of the typicality requirement is to ensure that "the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). Thus, the typicality requirement is met where, in proving his own case, "the representative plaintiff [also] establishes the elements needed to prove the class members' case…." *Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 683 (S.D. Fla. 2008) (*citing Brooks v. S. Bell Tel. & Tel. Co.*, 133 F.R.D. 54, 58 (S.D. Fla. 1990)).

Plaintiff easily meets this requirement because both he and the proposed class members were subject to Defendant's common course of conduct. That is, each continued to receive text message calls on his or her cellular telephone from Defendant despite the fact that they asked Defendant to stop sending them. As a result of that conduct, Plaintiff and the other class members are entitled to identical statutory damages and injunctive relief under the TCPA. As such, by pursuing his own claims, Plaintiff will necessarily advance the class members' interests, thus satisfying Rule 23(a)(3)'s typicality requirement.

### D.   Both Classes Meet the Adequacy of Representation Requirement.

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet this requirement the proposed class representative must not have any interests antagonistic to those of the other members of the class and he or she must be represented by competent counsel. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987).

Here, Plaintiff has the same interests as the other class members. He received unauthorized, automated text messages from Defendant on his cellular phone as a result of Defendant's uniform course of unlawful conduct. Therefore, like the class members, his interests

lie in ensuring that Defendant's unlawful conduct does not continue in the future and that he and the other class members recover the statutory damages and injunctive relief to which they are entitled. Plaintiff has no interests antagonistic to those of the class members. (*See* <u>Exhibit A</u>, Declaration of Plaintiff Christopher Legg).

Likewise, Plaintiff's counsel are well-respected members of the legal community who have extensive experience in the area of consumer protection, class actions and the TCPA, and are generally regarded as leading legal authorities in the State of Florida on TCPA actions. Moreover, counsel has litigated multiple cases nationally (in several federal district courts) involving the TCPA, and has the resources necessary to conduct litigation of this nature. Plaintiff's attorney Scott D. Owens has been appointed as lead class counsel in at least three other cases in the Southern District of Florida. (*See* <u>Exhibit B</u>, Declaration of Scott D. Owens). Plaintiff's counsel has already diligently investigated and dedicated substantial time and financial resources to the investigation of the claims at issue in this case, and will continue to do so throughout its pendency. To the best of the undersigned's knowledge, there is only one other attorney in the entire State of Florida who has litigated more claims under 47 U.S.C. § 227(b)(1)(A)(iii) than attorney Scott D. Owens.

**E.     The Proposed Classes Meet the Requirements of Rule 23(b)(2).**

Once the prerequisites of Rule 23(a) are satisfied, one of the three subsections of Rule 23(b) must be satisfied. Here, Plaintiff seeks certification of the proposed classes under Rule 23(b)(2) and (b)(3).

Rule 23(b)(2) provides that the party opposing certification must have acted or failed to act on grounds generally applicable to the proposed class, "so that final injunctive relief or corresponding declaratory relief is appropriate...." Fed. R. Civ. P. 23(b)(2); *see also Heffner v.*

*Blue Cross & Blue Shield of Alabama, Inc.,* 443 F.3d 1330, 1344 (11th Cir. 2006). "The requirement that the defendant act on grounds generally applicable to the 23(b)(2) class is encompassed in the commonality requirement of Rule 23(a)." *Diaz v. Hillsborough County Hosp. Auth.*, 165 F.R.D. 689, 695 (M.D. Fla. 1996). Thus, where a court finds that Rule 23(a)'s commonality requirement is met, the court should typically also find that the plaintiff has sufficiently shown that the defendant acted on grounds generally applicable to the class as a whole. *Id.*

There should be no question that Defendant acted on grounds generally applicable to both Class as a whole here. Indeed, Defendant unlawfully sent automated text messages to the cellular telephones of each of the putative class members in violation the TCPA. Defendant's conduct did not vary significantly from class member to class member and therefore, final injunctive relief is necessary to protect Plaintiff and the Class from such conduct in the future. The TCPA expressly provides for injunctive relief. 47 U.S.C. § 227(b)(3)(A) and (c)(5)(A). Thus, the requirements of Rule 23(b)(2) are met.

**F.     The Classes Also Meets the Requirements of Rule 23(b)(3).**

Plaintiff also seeks certification of both Classes under Rule 23(b)(3), which provides that a class action may be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). As discussed below, this case easily meets both requirements.

1.      *Common Question of Law or Fact Predominate.*

When considering the element of predominance, "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Klay*, 382 F.3d at 1254. The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan v. Kathzamn & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004); *see Dukes*, 131 S. Ct. at 2551-57. Thus, "[c]ommon issues of fact and law" predominate if they "ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Klay*, 382 F.3d at 1255.

Here, the common questions set forth above are at the heart of this litigation. The claims of Plaintiff and the other members of the class all arise from Defendant's standardized conduct of sending unauthorized text messages to cellular telephones, using the same automatic telephone dialing equipment. Evidence of the messages themselves, how Defendant made them, to what phone numbers they were made, and Defendant's receipt of response messages asking Defendant to stop sending them, can be shown from Defendant's own records and those of any telephone service provider engaged by Defendant. Thus, the only claim at issue in this case – Defendant's alleged violation of the TCPA – simply will not require individual proof such that class treatment would be inappropriate. Accordingly, this case meets the predominance requirement.

2.      *A Class Action Is a Superior Method of Resolving This Matter.*

In addition, the instant class action is superior to any other method available to fairly and efficiently adjudicate the class members' claims. "The inquiry into whether the class action is the

superior method for a particular case focuses on 'increased efficiency.'" *Agan*, 222 F.R.D. at 700 (*quoting Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)). Class actions are particularly appropriate where, as here, "it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. at 700 (internal citations omitted); *Amchem Prods., Inc., et al. v. Windsor*, 521 U.S. 591, 615 (1997) (stating that the "very core of the class action mechanism is to overcome the problem that small recoveries do not provide an incentive for any individual to bring a solo action prosecuting his or her rights"). The superiority inquiry focuses "'on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b) (3)] are those that can be adjudicated most profitably on a representative basis.'" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (*quoting* 7A CHARLES ALANWRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1780 at 562 (2d ed. 1986)). A district court has "broad discretion" in determining whether class treatment is superior. *Kamm v. Cal. City Dev. Co.,* 509 F.2d 205, 210 (9th Cir.1975).

It is manifest that a class action is the most efficient way to resolve the claims at issue. Absent class treatment, each individual class member would be required to file their own separate lawsuit to present the same or essentially the same evidence and legal and factual arguments, in duplicative proceedings, the result of which would be a needless multiplicity of trials conducted at enormous expense to both the judicial system and the litigants (as well as the risk of conflicting decisions). Such a result would not be efficient or fair to anyone.

In contrast to the efficiency benefits to be had from proceeding on a class basis, there is no indication that any significant number of persons in either class have expressed an interest in litigating their claims individually, let alone proof that any significant number of class members

have the incentive or wherewithal to pursue their claims individually. Moreover, given the fact

there are only a handful of attorneys in the country experienced in litigating TCPA class actions,

it would be difficult for each proposed class member to obtain individual counsel to handle their

claim. *See* Nancy Morawetz, *Underinclusive Class Actions*, 71 N.Y.U. L. Rev. 402 (1996).

Finally, proceeding on a class basis will promote consistency of rulings and judgments,

giving all parties and the judicial system the benefit of finality. Not surprisingly then, numerous

courts have certified TCPA claims for class action treatment. *Meyer v. Portfolio Recovery

Assocs., LLC*, 707 F.3d 1036, 1040 (9th Cir. 2012), *cert. denied*, 133 S.Ct. 2361 (2013); *Manno

v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 679 (S.D. Fla. 2013),

*reconsideration denied*, 2013 U.S. Dist. LEXIS 75959 (S.D. Fla. May 30, 2013)*; Lee v.

Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 295 (N.D. Cal. 2013); *Agne v. Papa John's Int'l, Inc*.,

286 F.R.D. 559, 561 (W.D. Wash. 2012); *Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389,

394 (N.D. Ohio 2012); *Mitchem v. Illinois Collection Serv.*, 271 F.R.D. 617, 620 (N.D. Ill.

2011); *Balbarin v. North Star Capital Acquisition, LLC*, 2010 C 1846, 2011 U.S. Dist. LEXIS

686 (N.D. Ill. Jan. 5, 2011). Likewise, the Supreme Court has expressly ruled that class actions

may proceed under a statute, like the TCPA, that provides a statutory minimum damages award

for each violation. *See Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S.

393 (2010). In sum, the instant motion should be granted.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff Christopher Legg, individually and on behalf of the

proposed class, respectfully requests that the Court enter an order granting Plaintiff's Motion for

Class Certification, and provide all other and further relief that the Court deems equitable and just to conclude this matter.[6]

Dated May 5, 2014.

<div style="margin-left:40%">

Respectfully submitted,
By:/s/ *Scott D. Owens*
Scott D. Owens, Esq.
*Attorney for Plaintiff and the putative Class*
Florida Bar No. 0597651
SCOTT D. OWENS, P.A.
664 E. Hallandale Beach Blvd.
Hallandale Beach, Florida 33009
Telephone: 954-589-0588
Facsimile: 954-337-0666
scott@scottdowens.com

</div>

---

[6] Plaintiff respectfully reserves the right to amend the putative class definitions prior to the conclusion of this matter, subject to Court approval. Class definitions may be amended or altered at any time before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C).

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on May 5, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on May 5, 2014, via U.S. mail and/or some other authorized manner on the following parties who are not authorized to receive electronically Notices of Electronic Filing:

American Eagle Outfitters, Inc.
c/o Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, Delaware 19809

By:/s/ *Scott D. Owens*
Scott D. Owens, Esq.
*Attorney for Plaintiff and the putative Class*
Florida Bar No. 0597651
SCOTT D. OWENS, P.A.
664 E. Hallandale Beach Blvd.
Hallandale Beach, Florida 33009
Telephone: 954-589-0588
Facsimile: 954-337-0666
scott@scottdowens.com